# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PITTMAN ASSETS MSSC, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3662** |
| **SCOTTSDALE INSURANCE COMPANY ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court are Plaintiff's Motion Partial Summary Judgment (Doc. 40); Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Bad Faith Claims (Doc. 42); and Defendant's Motion for Partial Summary Judgment on Bad Faith Claims in Streamlined Settlement Process (Doc. 43). For the following reasons, the Plaintiff's Motion for Partial Summary Judgment (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**; Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Bad Faith Claims (Doc. 42) is **DENIED as MOOT**; and Defendant's Motion for Partial Summary Judgment on Bad Faith Claims in Streamlined Settlement Process (Doc. 43) is **DENIED**.

## BACKGROUND

### I. Plaintiff's 2021 Claims

This case originally arose from an insurance dispute between Plaintiff Pittman Assets MSSC, LLC and its insurer, Defendant Scottsdale Insurance Company. Plaintiff filed a claim regarding its property located at 3015 E.

Causeway Approach, 3061 E. Causeway Approach, and 3051 E. Causeway Approach in Mandeville, Louisiana ("the Property"). Plaintiff alleged that Hurricane Ida caused the damage on August 29, 2021, and that the damage was covered by the insurance policy between the parties ("the Policy").[1]

Prior to Hurricane Ida, on May 4, 2021, Plaintiff filed a claim with Defendant for loss in the form of water damage that allegedly resulted from the failure of a high-pressure water supply line on part of the Property. Defendant estimated and paid for only some repairs covered under the Policy.[2] On October 5, 2022, Plaintiff filed suit in this Court alleging that Defendant violated Louisiana Revised Statutes §§ 22:1892 and 22:1973 by arbitrarily and capriciously failing to timely tender payment for all its claims under the Policy.

## II. The Streamlined Settlement Program

Because the claims at issue in the case arise from Hurricane Ida, this case was subject to the Eastern District of Louisiana's Streamlined Settlement Program ("SSP"), part of which mandates that the parties attend mediation. The facts relating to the mediation are undisputed. Counsel for Plaintiff, counsel for Defendant, and a court-appointed mediator participated in court-ordered mediation on July 12, 2023.[3] Mediation was unsuccessful, but the parties continued negotiations.[4] On July 26, 2023, the mediator sent

---

[1] Doc. 44-3.

[2] In e-mails sent after Plaintiff filed its Hurricane Ida claim, representatives of the parties discussed whether certain repairs were complete, and if so, whether there was a certificate of completion available for Defendant to use in its determination of what was damage resulted from the May 2021 incident and what resulted from Hurricane Ida so as to pay Plaintiff the proper amount owed under the Policy. On January 19, 2022, a representative of Plaintiff stated that there was no certificate of completion available. Doc. 42-11. Defendant never received a certificate of completion from Plaintiff. Doc. 42-12, ¶13.

[3] Doc. 40-6 at 2, ¶5.

[4] *Id.*, ¶6.

2

the following email ("July 26 Email") to both Plaintiff's and Defendant's counsel:

> I set forth the following Mediator's proposal – that this case be settled for $710,000 in new money. The parties agree that they may execute more formal documents but these monetary terms are binding.
>
> I ask that each of you inform me privately, confidentially, and separately by email by close of business (5:00 p.m.) Friday, July 28, 2023, whether you "ACCEPT" or "REJECT" this proposal. DO NOT REPLY ALL! . . . This protects both of the parties from being leveraged. Of course, if both sides accept the proposal, I will inform you immediately that the matter is settled.[5]

On July 31, 2023, the mediator sent an email ("July 31 Email") to counsel that "[b]oth parties have accepted the mediator's proposal."[6]

### III. Girod Titling Trust

After this exchange, on August 2, 2023, Defendant's counsel emailed Plaintiff's counsel that "we have a few details that we have to address in addition to the amount of settlement."[7] This included the fact that another law firm "sent [Defendant's counsel] a letter[8] in June [2023] advising that they represent Girod Titling Trust [("Girod")] and that they consider Girod a loss payee under the policy. It appears that [Defendant] will need to include them on any settlement payment."[9] Girod asserts that it is the assignee of the Multiple Indebtedness Mortgage executed by Plaintiff in favor of First NBC Bank.[10] Defendant's counsel asked Plaintiff's counsel whether they agreed to

---

[5] Doc. 40-2.
[6] Doc. 40-4.
[7] Doc. 44-6 at 1.
[8] Doc. 44-4.
[9] Doc. 44-6 at 1.
[10] Doc. 43-1 at 4.

3

this inclusion or not, as well as the legal basis upon which either opinion was formed.[11]

On August 4, 2023, Plaintiff's counsel responded that Plaintiff "does not agree to Girod Titling Trust being included in any way, including on the settlement check"[12] because Plaintiff removed Girod from the Policy in June 2021.[13] Still, on August 29, 2023, Defendant issued a check in the amount of $710,000 to Plaintiff, Plaintiff's counsel, and Girod.[14] Plaintiff rejected and returned the check because it included Girod as a payee.[15] Later, in November 2023, Stirling Properties, LLC ("Stirling") filed a Motion to Intervene or be substituted in the place of Plaintiff in the instant litigation as court-appointed keeper for the Property.[16] In December 2023, Magistrate Judge Michael North granted Stirling's Motion to Intervene. On March 14, 2024, Plaintiff filed its First Supplemental and Amended Complaint wherein it sought relief for Defendant's failure to timely fund the valid and enforceable settlement agreement it believes the parties made via the mediator in July 2023.

Now before the Court are three cross-motions for partial summary judgment—Plaintiff's Motion for Partial Summary Judgment; Defendant's

---

[11] *Id.*
[12] Doc. 44-6 at 1.
[13] *See* Doc. 37 at 2-3, ¶¶50-52.
[14] Doc. 40-5. Defendant avers that the check was issued on August 29, 2023 and included Girod Titling Trust as a payee "[t]o protect Scottsdale's and Girod's interests." Doc. 44-1 at 5.
[15] *See* Doc. 40-6 at 3 ¶14.
[16] *See* Doc. 18. To bolster argument against including Girod on the check and Stirling's inclusion, Plaintiff detailed litigation between itself and Girod that, at the time of filing, was taking place in the Twenty-Second Judicial District Court for the Parish of St. Tammany. In this suit, Girod sought enforcement of a mortgage by executory process. According to Plaintiff, the promissory note at issue in the litigation is the same one upon which Girod bases Stirling Properties, LLC's intervention in the instant suit. In June 2023, Judge John A. Keller held that Plaintiff "made prima facie showing that" it and others, "were fraudulently induced into executing the note." Doc. 37 at 3-7, ¶¶53-60.

4

Motion for Partial Summary Judgment Regarding Plaintiff's Bad Faith Claims; and Defendant's Motion for Partial Summary Judgment on Bad Faith Claims in Streamlined Settlement Process. Each motion is opposed.[17]

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[19] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[21] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[22] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[23]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate

---

[17] Docs. 44 and 45.
[18] FED. R. CIV. P. 56.
[19] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[20] *Id.* at 248.
[21] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[22] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[23] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[24] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[25] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[26] The Court will address each partial motion for summary judgment in turn.

## LAW AND ANALYSIS

### 1. *Plaintiff's Motion for Partial Summary Judgment (Doc. 40)*

Plaintiff moves for partial summary judgment that the parties perfected a binding and enforceable settlement agreement, arguing that there was a meeting of the minds between the parties regarding the essential terms necessary to resolve their case. Defendant, however, avers that the agreement to the mediator's proposal was not a full and complete compromise. This Court sitting in diversity applies Louisiana substantive law.[27] Because Louisiana law prescribes several formalities to form a compromise, the July 2023 emails between the parties and the mediator must comport with such formalities; otherwise, the agreement is null.[28]

---

[24] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[25] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[26] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[27] Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 416 (1996) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).
[28] *See* Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 390 (5th Cir. 2010) (citing LA. CIV. CODE arts. 1927, 2029, & 3071).

Louisiana Civil Code article 3071 defines a compromise as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[29] There are two elements of a compromise: "(1) mutual intention of preventing or putting an end to litigation, and (2) reciprocal concessions of the parties to adjust their differences."[30] "[T]o have a valid compromise, there must be a meeting of the minds between the parties as to what they intended when the compromise was reached."[31] A valid compromise must also "be made in writing or recited in open court."[32] "Emails can qualify as the signed writings needed to form contracts."[33] "The requirement that the agreement be in writing does not necessarily mean that the agreement must be contained in one document."[34] "Where two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected."[35] "Compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it."[36]

First, the emails exchanged between the mediator and the counsel for Plaintiff and Defendant implicitly demonstrate a mutual intention of

---

[29] LA. CIV. CODE art. 3071.
[30] Trahan v. Coca Cola Bottling Co. United, Inc., 894 So. 2d 1096, 1104 (La. 2005) (citing Brown v. Drillers, Inc., 630 So. 2d 741, 747 n.8 (La. 1994)). While Louisiana Civil Code article 3071 was amended in 2007, its substance was incorporated into the current version of articles 3071 and 3072. *See* Klebanoff v. Haberle, 978 So. 2d 598, 602 n.2 (La. App. 2 Cir. 2008).
[31] Parich v. State Farm Mut. Auto Ins. Co., 919 F.2d 906, 914 (5th Cir. 1990).
[32] LA. CIV. CODE art. 3072.
[33] *Preston L. Firm*, 622 F.3d at 390 (citing LA. CIV. CODE art. 2046).
[34] *Klebanoff*, 978 So. 2d at 602 (citing Felder v. Ga. Pac. Corp., 405 So. 2d 521 (La. 1981)).
[35] *Id.* (citing *Felder*, 405 So. 2d 521; Townsend v. Square, 643 So. 2d 787 (La. App. 4 Cir. 1994)).
[36] *Id.* (citing Rivett v. State Farm, 508 So. 2d 1356 (La. 1987)).

preventing or putting an end to litigation. If the parties did not wish to engage in the SSP pursuant to Hurricane Ida Case Management Order No. 1, one or both might have petitioned the Magistrate Judge to opt out of the process entirely.[37] Second, the emails evidence reciprocal concessions of the parties to adjust their differences. It is undisputed that negotiations that the parties engaged in before the Magistrate Judge continued with the mediator and led to both parties agreeing to the terms of the July 26 Email.[38] "This [July 31 Email] indicates that there was acceptance of the terms set forth in the [July 26 Email]; together, these emails form a valid compromise."[39] Importantly, though the emails "may encompass less than all the issues between the parties, this does not negate [their] enforceability."[40] As such, the Court finds that the July 31 Email constitutes a valid, final agreement as to the price term of the settlement between the parties.

Critically, however, Plaintiff fails to show that other terms of the settlement, such as *who* is owed which amount under the Policy, are included in this agreement. Taken together—the specific language of the July 26 Email exclusively seeking an agreed upon price term, Defendant's August 2, 2023 email inquiring about the inclusion of Girod on the settlement check, and Plaintiff's August 4, 2023 email disclaiming Girod's status as a loss payee and their right to the settlement amount—all make it appear to this Court that there remains a dispute of material fact as to whether there was a meeting of the minds between the parties regarding material terms of the settlement other than the $710,000 figure.

---

[37] Hurricane Ida Case Management Order No. 1.
[38] *See* Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 720 So. 2d 372, 374 (La. App. 4 Cir. 1998) (finding that parties signing a document after a full day of mediation signified a meeting of the minds).
[39] *See Preston L. Firm*, 622 F.3d at 391.
[40] *Walk Haydel & Assocs., Inc.*, 720 So. 2d at 374.

8

Considering this, the Court finds that the July 31 Email constituted a valid and enforceable settlement agreement only as to the amount Defendant owed Plaintiff under the Policy.[41] As such, Plaintiff's Partial Motion for Summary Judgment is granted as to the $710,000 payment price agreed to between the parties. Plaintiff's Partial Motion for Summary Judgement is denied as to the appropriateness of Girod's inclusion and its impact on the validity of the entire settlement agreement. Accordingly, Plaintiff's Partial Motion is granted in part and denied in part.

### *2. Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Bad Faith Claims (Doc. 42)*

Defendant seeks partial summary judgment that it was not arbitrary or capricious in its handling of Plaintiff's claims regarding the Property prior to the settlement. In their Opposition, relying on this Court's finding that the agreement memorialized in the July 31 E-mail is in fact a final settlement, Plaintiff responds that the claim of bad faith on Defendant's part is settled and, therefore, moot.

The Court agrees with Plaintiff. In its Response to the instant motion, Plaintiff states clearly that it

> does not seek to relitigate Scottsdale's actions pre-settlement. Plaintiff's claim that Scottsdale acted arbitrarily and capriciously in its handling of Plaintiff's Hurricane Ida claim was resolved in July 2023 when the parties settled. The only remaining question is whether Scottsdale's refusal to fund a settlement that was consummated on July 31, 2023, is in bad faith under Louisiana Revised Statutes sections 22:1892 and 22:1973.4.[42]

---

[41] *See id.* (enforcing the agreement only "according to its terms" due to clear language used in the document's preamble which is comparable to the limited prompt articulated by the mediator in the instant case).

[42] Doc. 45 at 2.

Further, in its Reply, Defendant "does not dispute that a binding and enforceable settlement agreement was reached with Plaintiff on July 31, 2023."[43] As such, Plaintiff's claims for bad faith handling of its claim prior to the settlement are resolved[44], rendering Defendant's Motion for Partial Summary Judgment regarding bad faith in the claims handling process moot, and therefore, denied.

### *3. Defendant's Motion for Partial Summary Judgment on Bad Faith Claims in Streamlined Settlement Process (Doc. 43)*

Defendant also seeks partial summary judgment that it did not act in bad faith while participating in the SSP, arguing that its inclusion of Girod on the settlement check was proper under the Policy and necessary to avoid new litigation from the interpleader. Plaintiff opposes, asserting that there is a factual dispute whether Defendant's failure to fund the settlement amounts to bad faith. A finding that Defendant was in bad faith in failing to fund the settlement turns on whether Defendant's inclusion of Girod on the check, as well as its subsequent failure to interplead the funds, constitutes bad faith.

To support its Motion and its decision to keep Girod on the check, Defendant points to Girod's policy with Plaintiff, Defendant's policy with the Plaintiff, and Louisiana case law. The mortgage between Plaintiff and Girod provides that the "[m]ortgagee shall have the right to directly receive the proceeds of all insurance protecting the property. In the event that Mortgagor should receive any such insurance proceeds, Mortgagor agrees to immediately

---

[43] Doc. 46 at 2.

[44] *See* City Nat. Bank v. United States, 907 F.2d 536, 544 (5th Cir. 1990) (finding that federal district courts may use their discretion to "treat statements in briefs as binding judicial admissions of fact").

10

turn over and to pay such proceeds directly to Mortgagee."[45] The Policy contains the following endorsement ("the Standard Mortgage provision"):

> 2. Mortgage holders
>    a. The term mortgage holder includes trustee.
>    b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedent, as interests may appear.
>    c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building of structure.
>    d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:
>       (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
>       (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
>       (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.
> All of the terms of this Coverage Part will them apply directly to the mortgageholder.
>    e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
>       (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
>       (2) The mortgageholder's claim will not be impaired.
> At our option, we may pay to the mortgageholder the whole principle on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us. . . .[46]

---

[45] Doc. 43-1 at 5.
[46] Doc. 43-4 at 14, §F, ¶2.

11

Defendant claims these policies bound it to include Girod on the settlement check because, pursuant to a standard mortgage clause like the one in operation here, "Girod, as the mortgagee for the property, ha[d] an interest in the insurance policy and has the right to be included on any checks for insurance proceeds."[47] Defendant asserts that because of this interest, failing to include Girod on the check would have left them open to further litigation.[48]

Without evaluating whether Plaintiff's deletion of Girod from the Policy without its notice or consent was proper and whether Girod remained a loss payee as a result, the Court finds other options were available to Defendant in its funding of the settlement—namely, interpleader.[49] Louisiana courts have not determined whether an insurance company's failure to initiate such a proceeding and interplead funds in the face of uncertain payees is *de facto* an act of bad faith. Still, it was an avenue available to Defendant that it opted not to take, delaying the settlement process interminably and based entirely on its own self-interest. Further, none of the cases cited by Defendant to support its inclusion of Girod on the check features the complication of a loss payee that was allegedly removed from the policy between the plaintiffs and insurer defendants.[50]

Though Defendant's choice to feature Girod on the settlement check regardless of Plaintiff's protestations is predicated on its own reasonable fear

---

[47] Doc. 43-1 at 14.
[48] *Id.* at 6.
[49] *See* Cimarex Energy Co. v. Mauboules, 40 So. 3d 931, 940, (La. 2010) (quoting Landry & Passman Realty, Inc. v. Beadle, Swartwood, Wall & Associates, Inc., 303 So.2d 761, 763 (La.App. 1 Cir.1974)) ("The primary purpose of the concursus proceeding is to protect a stakeholder 'from multiple liability from conflicting claims and from vexation attending involvement in multiple litigation in which stakeholder may have no direct interest.'")
[50] *See* May v. Market Ins. Co., 387 So.2d 1081 (La. 1980); Chrysler Credit Corp. v. Louisiana Ins. Guar. Ass'n, 514 So.2d 245 (La. App. 5 Cir. 1987); Hurtado v. Riverside Court Condo. Ass'n Phase II, Inc.. 2009 U.S. Dist. LEXIS 105337 (E.D. La. Oct. 28, 2009).

of litigation, the Court finds that questions remain regarding Defendant's bad faith in its funding of the settlement. As such, granting partial summary judgment on this issue in its favor would be improper. Accordingly, Defendant's request for partial summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion Partial Summary Judgment (Doc. 40) is **DENIED IN PART** and **GRANTED IN PART**; Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Bad Faith Claims (Doc. 42) is **DENIED as MOOT** and Defendant's Motion for Partial Summary Judgment on Bad Faith Claims in Streamlined Settlement Process (Doc. 43) is **DENIED**.

New Orleans, Louisiana this 2nd day of December, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

13